UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                          )
MARY DOE, as Guardian of JANE DOE,        )
and MARY DOE and JOHN DOE,                )
Individually, as parents of JANE DOE,     )
                                          )
                                          )
            Plaintiffs,                   )
                                          )    Civil Action
v.                                        )    No. 21-cv-10172-PBS
                                          )
DENNIS-YARMOUTH REGIONAL SCHOOL           )
DISTRICT, ABIR ZAINEH, SUSAN HARDIGAN,    )
MARY MOEs 1-5, and MICHAEL MOEs 1-5,      )
                                          )
            Defendants.                   )
_____ )

**MEMORANDUM AND ORDER**

January 4, 2022

Saris, D.J.

**INTRODUCTION**

Jane Doe ("Jane"), a sixteen-year-old, was enrolled in
Dennis-Yarmouth Regional High School's Wave Program for students
with mental disabilities. After Jane was allowed to go to the
bathroom unsupervised, Jane's assistant discovered her and a
male Wave Program student in the boys' bathroom with their
clothes off. Plaintiffs, Mary Doe, as guardian of Jane Doe, and
Mary Doe and John Doe, individually, as parents of Jane Doe
("the Does"), allege that Jane was sexually assaulted, harassed,
and abused. They assert various federal, constitutional, and

common law tort claims against Dennis-Yarmouth Regional School
District ("Dennis-Yarmouth"). Count I alleges that Dennis-
Yarmouth was negligent in failing to supervise students who
required 1 to 1 supervision for the entire school day under the
Massachusetts Tort Claims Act, M.G.L. c. 258 § 2. Count II
alleges a deprivation of due process rights under 42 U.S.C. §
1983. Count III alleges a violation of Section 504 of the
Rehabilitation Act. 29 U.S.C. § 794 Count IV alleges a violation
of Title IX of the Education Amendments of 1972, 20 U.S.C. §§
1681-1686.

Plaintiffs also assert claims against Abir Zaineh, the head
of the Wave program, and Jane's assistant Susan Hardigan.  Count
V, VI, and VII allege a deprivation of Jane's rights as a
handicapped person under Section 103 of Chapter 93 of
Massachusetts General Laws by Dennis-Yarmouth, Abir Zaineh, and
Susan Hardigan, respectively. Counts VIII and IX allege
Intentional Infliction of Emotional Distress by the two
individual defendants. Count X alleges loss of consortium for
Plaintiffs Mary Doe and John Doe as parents of Jane Doe against
all defendants.

After hearing, Zaineh and Hardigan's motions to dismiss
(Dkt. 16, Dkt. 19) are **ALLOWED** (Counts VI, VII, VIII, IX, X).
The Court determines there is no just reason for delay and
grants Zaineh and Hardigan's motions for separate and final

judgment under Federal Rule of Civil Procedure 54(b). Defendant Dennis-Yarmouth's motion to dismiss is **ALLOWED IN PART** (Counts II, III, VI, VII, X) and **DENIED IN PART** (Counts I, IV, and V).

## FACTUAL BACKGROUND

The Complaint alleges the following facts.

## I.   Parties

While Jane had a chronological age of sixteen at the time of the alleged assault on February 5, 2018, she had the mental capacity of a six-year-old child. Jane was born with Phelan-McDermid Syndrome, a rare genetic condition that causes significant cognitive impairments. Due to her condition, Jane's Individualized Education Plan ("IEP") required that she have a one-to-one assistant for the entire school day at Dennis-Yarmouth.

Defendant Abir Zaineh ("Zaineh") was a lead teacher in the Wave Program in the Dennis-Yarmouth Regional School District. Defendant Susan Hardigan ("Hardigan") was a one-to-one assistant in the Wave Program.

## II.  Dennis-Yarmouth Policies for One-to-One Assistants

Jane's IEP requires that she would be accompanied by her one-to-one assistant at all times throughout the school day. Staff at Dennis-Yarmouth further assured Jane's parents that Jane would not be left unsupervised at any time to ensure her safety and assist her when she needed help. Jane was unable to

perform her basic bathroom functions consistently and with proper hygiene, so her assistant was always required to accompany her into the restroom.

The Does allege that "[d]espite these requirements, when a 1 to 1 assistant was absent, the administration often failed to provide a substitute assistant, so there would not be enough staff to supervise all Wave program students." Dkt. 1 ¶ 32. Furthermore, Wave staff members were entitled to a thirty-minute lunch period where they were, by contract, duty free. Dennis-Yarmouth did not account for this break when it scheduled and assigned staff as one-to-one assistants; there was no guarantee that students requiring one-to-one assistants would be supervised during their assistants' lunch breaks. Wave staff members ate their lunches at a table next to the Wave program students, but they were off the clock during their lunch period.

Defendants were all aware that this approach created gaps of unsupervised time and the risk that a child was not receiving one-to-one assistance. In the months leading up to the bathroom incident, Zaineh expressed concerns about the lack of substitutes. On January 26, 2018, Zaineh emailed the Assistant Principal, Mary O'Connor, to "discuss[] the bathroom and hygiene assistance that approximately six of the Wave program students required and explained that all of the 1 to 1 assistants were necessary." Dkt. 1 ¶ 35. Plaintiffs allege that "[d]espite this

[4]

notice to the administration and acknowledgement by Zaineh of
the necessity of 1 to 1 assistants, practices at Dennis-Yarmouth
did not change." Id. ¶ 36.

### III. **The Assault**

On February 5, 2018, Jane and Christopher Coe, another
student who required one-to-one supervision because of his Down
Syndrome, were eating lunch in the cafeteria. Coe's one-to-one
assistant was absent that day, but Dennis-Yarmouth did not
provide a substitute. At 10:53 AM, Jane went to the staff table,
which included Hardigan and Zaineh, to ask to use the restroom.
Hardigan and Zaineh sent Jane to the restroom alone. Jane
entered the girls' bathroom at 10:54 AM. Also at 10:54 AM, Coe
asked the aids at the staff table if he could go to the water
fountain. The teachers sent Coe to the water fountain alone. Coe
then approached the girls' bathroom and waited outside. When
Jane left the girls' bathroom, Coe asked Jane to go with him
into the boys' bathroom. Jane and Coe entered the boys' bathroom
at 10:57 AM.

Coe then removed all of Jane's clothing. Jane stated that
Coe was not being nice to her, Coe "touched her front butt," and
they hugged while they were naked. Id. ¶¶ 55-56.

By this point, fifteen minutes had passed since Jane and
Coe left the cafeteria. No one went looking for them until five
minutes after lunch ended. At 11:09 AM, Hardigan looked for Jane

in the girls' bathroom. At 11:10 AM, another assistant alerted
Hardigan that Coe and Jane were in the boys' bathroom. When
Hardigan entered the bathroom, Jane and Coe were naked in the
large bathroom stall. Jane said they had been wrestling. Ten
different male students entered the bathroom while Jane and Coe
were inside. Two of those students were later criminally charged
for secretly recording Jane and Coe in the bathroom.

As a result of this incident, Jane withdrew from Dennis-
Yarmouth. Dennis-Yarmouth's Title IX Coordinator, Maria Lopes,
later wrote that she did not conduct an investigation into the
assault because "the February 5, 2018, encounter between [Jane]
and the other student had been viewed as a mutual two-sided
interaction." Id. ¶ 111.

## MOTION TO DISMISS STANDARD

A complaint must "state a claim to relief that is plausible
on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)
(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570
(2007)). At the motion to dismiss stage, "we take the
nonconclusory, nonspeculative facts contained in the complaint
as true and draw all reasonable inferences from those facts in
[Doe's] favor." Doe v. Pawtucket Sch. Dep't, 969 F.3d 1, 5 (1st
Cir. 2020) (quoting Hamann v. Carpenter, 937 F.3d 86, 88 (1st
Cir. 2019)).

**DISCUSSION**

I.   **Count I: Negligence under Mass. Gen. Laws ch. 258, § 2**

The Does bring a negligence claim against Dennis-Yarmouth under the Massachusetts Tort Claims Act ("MTCA"). Under the MTCA, "[p]ublic employers shall be liable for injury . . . caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment." Mass. Gen. Laws ch. 258, § 2. The Does allege that Dennis-Yarmouth breached its duty of care to Jane "by negligently failing to train, supervise, and otherwise failing to make scheduling and staffing decisions to ensure that all students requiring 1 to 1 supervision received such supervision for 100% of the school day." Dkt. 1 ¶ 74.

Dennis-Yarmouth maintains that Massachusetts General Laws ch. 258, § 10(j) bars the Does' claims because "[w]hen the allegations are that the municipality failed to act, or failed to appropriately act, sovereign immunity continues to apply." Dkt. 22 at 5. Section 10(j) provides that the MTCA shall not apply to

> any claim based on an act or failure to act to prevent
> or diminish the harmful consequences of a condition or
> situation, including the violent or tortious conduct of
> a third person, which is not originally caused by the
> public employer or any other person acting on behalf of
> the public employer.

Mass. Gen. Laws ch. 258, § 10(j). However, an exception to the exclusion found in section 10(j)(1) allows a plaintiff to recover on "any claim based upon explicit and specific assurances of safety or assistance, beyond general representations that investigation or assistance will be or has been undertaken . . . provided that the injury resulted in part from reliance on those assurances." Mass. Gen. Laws ch. 258, § 10(j)(1).

The Does adequately plead that their claim falls under this statutory exception to § 10(j).[1]  They allege that "[s]taff at DYRHS made verbal and written assurances to Jane's parents — related to Jane's Individualized Education Plan — that Jane would have a 1 to 1 assistant for the entire school day to ensure her safety and assist with daily living skills." Dkt. 1 ¶ 24. This assurance was explicit in that staff members verbalized the assurance to Jane's parents and put it down in writing. It was specific because it clearly defined what actions they would take and for how long – Jane would not be left unsupervised at any point, per her IEP, for the entirety of the school day. See Suboh v. City of Revere, Mass., 141 F. Supp. 2d 124, 134 (D. Mass. 2001) (holding that the verbal assurance

---

[1] Because the claim plainly falls under this statutory exception, the Court need not address the closer question of whether Dennis-Yarmouth was the original cause of the harm by failing to staff adequately.

plaintiff received from police officers that her daughter would be safely protected in state custody was considered an explicit and specific assurance of assistance under § 10(j)(1) because the course of action had a fixed duration and was unambiguous); Thomas v. Town of Chelmsford, 267 F. Supp. 3d 279, 313 (D. Mass. 2017) (quoting Compl. ¶ 100) (holding that a superintendent's statement that "[w]e have teachers in the hallways that monitor things and he will be fine" is an explicit and specific assurance of safety under § 10(j)(1)).

## A.   Discretionary Function Exclusion

Dennis-Yarmouth also contends that the school retains immunity pursuant to the discretionary function exclusion. Section 10(b) retains immunity for "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty of the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused." Mass. Gen. Laws ch. 258 § 10(b).  This exclusion is designed to immunize policymaking or planning, as opposed to operational actions. See Harry Stoller & Co. v. City of Lowell, 587 N.E.2d 780, 783 (Mass. 1992) (quoting Whitney v. Worchester, 366 N.E.2d 1210, 1216 (Mass. 1977)) (distinguishing "between those functions that 'rest on the exercise of judgment and discretion and represent planning and policymaking for which there would be

[9]

governmental immunity and those functions which involve the implementation and execution of such governmental policy or planning for which there would be no governmental immunity'") (cleaned up). See also Doe v. Bradshaw, 203 F. Supp. 3d 168, 187 (D. Mass. 2016) (quoting Greenwood v. Town of Easton, 828 N.E. 2d 945, 948-49 (Mass. 2005)) ("Massachusetts courts have instructed that the 'discretionary function exception is narrow' and draw a distinction between discretionary decisions that make policy and those that implement it.").

Dennis-Yarmouth did not have discretion in the execution and implementation of Jane's IEP: her IEP set out that she would have one-to-one assistance at all times throughout the school day. Carrying out that agreement was therefore an operational action.  See Suboh, 141 F. Supp. 2d at 133 (quoting Harry Stoller & Co., 587 N.E.2d at 782) ("[I]f the governmental actor had no discretion because a course of action was prescribed by a statute, regulation, or established agency practice, a discretionary function exception to governmental liability has no role to play in deciding the case.").

Accordingly, the Court denies the motion to dismiss Count I.

## II.  Count II: 42 U.S.C. § 1983 through Due Process Clause

The Does claim a deprivation of Jane's substantive due process "right to be free from violations of bodily integrity." Dkt. 1 ¶ 88.  To establish a substantive due process claim, a plaintiff must show that some government conduct caused a deprivation of her protected interest in life, liberty, or property.  See Rivera v. Rhode Island, 402 F.3d 27, 33-34 (1st Cir. 2005).  Jane was harmed by another student, and therefore the claimed government involvement is one step removed: the Does allege that Dennis-Yarmouth had an affirmative duty to protect Jane and failed to do so.

As a general rule, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."  DeShaney v. Winnebago Cty. Dep't. of Soc. Servs., 489 U.S. 189, 197 (1989).  "[T]he purpose of the Due Process Clause is to protect the people from the state, not to ensure that the state protects them from each other."  Rivera, 402 F.3d at 34.

### 1.   *Special Relationship*

However, the Supreme Court has also recognized an exception to this general rule, under which a state has a constitutional duty to protect an individual against private violence when "the State takes a person into its custody and holds him there against his will" and "by the affirmative exercise of [the

state's] power so restrains an individual's liberty that it renders him unable to care for himself." DeShaney, 489 U.S. at 199-200. See also Rivera, 402 F.3d at 34 (describing special relationship as forming "when an individual is incarcerated or is involuntarily committed to the custody of the state").

The Does maintain that Jane's "condition was such that she was not even allowed to perform such a basic human task as to go to the bathroom by herself," and "[t]his is a level of control which denies [Jane and Coe] the right to 'provide for [their] basic human needs.'" Dkt. 30 at 14. But here the Does are describing a limitation on Jane's ability to care for herself caused by her mental disability, not the power that the school has exerted over her.

The First Circuit has yet to find a special relationship between a school and a student, though it has cautioned that "[n]evertheless, we are loath to conclude now and forever that inaction by a school toward a pupil could never give rise to a due process violation." Hasenfus v. LaJeunesse, 175 F.3d 68, 72 (1st Cir. 1999) (citing Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 655 (1995)) ("[W]e do not, of course, suggest that public schools as a general matter have such a degree of control over children as to give rise to a constitutional 'duty to protect.'"). The First Circuit has noted that there may be

"narrow circumstances" where there is a due process violation for a specific duty, such as when harm has befallen a student, the teacher knows of the harm, and the teacher does nothing. See Hasenfus, 175 F.3d at 72 (offering as an example "[i]f Jamie had suffered a heart attack in the classroom, and the teacher knew of her peril, could the teacher merely leave her there to die without summoning help?").

The Does' claim falls outside of these narrow circumstances.  While they argue that the assault would not have happened but for the policy of no supervision during lunchtime, the school did not have knowledge that the assault was occurring until it had already happened.

### 2.   *State-Created Danger*

The First Circuit has also recently recognized the "state-created danger" theory, which provides another exception to the general rule.  See Irish v. Fowler, 979 F.3d 65, 67 (2020) ("Under the state-created danger substantive due process doctrine, [a defendant] may be held liable for failing to protect plaintiffs from danger created or enhanced by their affirmative acts.").  Plaintiffs argue that Dennis-Yarmouth created a danger by "creat[ing] a policy in which there was a 30-minute gap every day during which the persons assigned to protect [students needing constant supervision] were off duty."

Dkt. 30 at 14.  Students that were not capable of taking care of basic hygiene skills were left to fend for themselves during this break.

Whether or not the school created a danger, "there is a further and onerous requirement that the plaintiff must meet in order to prove a constitutional violation: the state actions must shock the conscience of the court."  Rivera, 402 F.3d at 35.  "The burden to show state conduct that shocks the conscience is extremely high, requiring stunning evidence of arbitrariness and caprice that extends beyond mere violations of state law, even violations resulting from bad faith to something more egregious and more extreme."  Melendez-Garcia v. Sanchez, 629 F.3d 25, 37 (1st Cir. 2010) (cleaned up); see also Rivera, 402 F.3d at 36 (quoting Cty. of Sacramento v. Lewis, 523 U.S. 833, 849 (1998)) ("[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level."). Deliberately indifferent behavior may suffice where the state actor had an "opportunity to reflect and make reasoned and rational decisions," but the plaintiff "must, at a bare minimum, demonstrate that [the defendant] actually knew of a substantial risk of serious harm . . . and disregarded that risk."  Irish, 979 F.3d at 74 (quoting Coyne v. Cronin, 386 F.3d 280, 288 (1st Cir. 2004).

[14]

Here the Does' claim fails. Dennis-Yarmouth's failure to sufficiently implement Jane Doe's IEP and provide constant one-to-one supervision cannot be described as conduct intended to harm her.  Taking as true that Dennis-Yarmouth was on notice that there was inadequate staffing and supervision and therefore had an opportunity to revise its policy, the Court concludes that the Does have not shown that Dennis-Yarmouth actually knew Jane was at a substantial risk of serious harm if she was left unattended, let alone that the serious harm would be a sexual assault.  Dennis-Yarmouth's motion to dismiss Count II is therefore allowed.

### III. Count III: Section 504 of the Rehabilitation Act, 29 U.S.C. 794

The Does allege that Dennis-Yarmouth violated Section 504 of the Rehabilitation Act by "refusing to provide students who needed 1 to 1 supervision with assistance for 100% of the school day." Dkt. 1 ¶ 96.  They assert that Jane suffered physical injury and severe emotional distress as a result, and they seek money damages.

Section 504 "cover[s] both adults and children with disabilities, in both public schools and other settings." Fry v. Napoleon Cmty. Schs., 137 S. Ct. 743, 749 (2017).  It "requires that a public entity make 'reasonable modifications' to existing practices, including by offering support services, to

'accommodate' disabled persons." Doucette v. Georgetown Pub.
Sch., 936 F.3d 16, 23 (1st Cir. 2019) (quoting Alexander v.
Choate, 469 U.S. 287, 299-300 (1985)).  Importantly, Section 504
is subject to the exhaustion requirement laid out in the
Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C.
§ 1415(l).  Section 1415(l) provides:

> Nothing in [the IDEA] shall be construed to restrict or
> limit the rights, procedures, and remedies available
> under the Constitution, the Americans with Disabilities
> Act of 1990, title V of the Rehabilitation Act of 1973,
> or other Federal laws protecting the rights of children
> with disabilities, except that before the filing of a
> civil action under such laws seeking relief that is also
> available under [the IDEA], the [IDEA's administrative
> procedures] shall be exhausted to the same extent as
> would be required had the action been brought under [the
> IDEA].

20 U.S.C. § 1415(l).  Dennis-Yarmouth contends that the Section
504 claim should be dismissed on two grounds: first, the Does
have failed to exhaust their administrative remedies, and
second, the Does have failed to allege disability-based
discrimination.

**A. The IDEA's Exhaustion Requirement**

The IDEA ensures that children with disabilities "have
available to them a free appropriate public education,"
("FAPE").  20 U.S.C. § 1400(d)(1)(A).  A FAPE includes "both
'instruction' tailored to meet a child's 'unique needs' and
sufficient 'supportive services' to permit the child to benefit

from that instruction." Fry, 137 S. Ct. at 748 (quoting 20
U.S.C. § 1401(9), (26), (29)).  "A disabled child's IEP – her
written education plan – is the 'primary vehicle' for providing
the mandated FAPE."  Doucette, 936 F.3d at 22 (quoting Fry, 137
S. Ct. at 749). A parent may challenge the adequacy of the IEP
or its implementation through the administrative process set
forth in the IDEA.  See 20 U.S.C. § 1415 (requiring a
preliminary meeting with the child's IEP team and then a due
process hearing if the issue is not resolved).  While IDEA
exhaustion is "the general rule, it is not absolute." Doucette,
936 F.3d at 22 (internal citations omitted).  "Fundamentally,
rules requiring administrative exhaustion are not meant to be
enforced in a manner that would require 'empty formalit[ies].'"
Id.

     The Supreme Court recently addressed the scope of the
exhaustion requirement, holding that IDEA exhaustion is only
required where the "substance, or gravamen, of the plaintiff's
complaint" seeks "relief for the denial of a FAPE."  Fry, 137 S.
Ct. at 752.  The statutory language compels exhaustion when a
plaintiff seeks "relief" that is "available" under the IDEA.
Id. at 753.  "Under Fry, if a school 'refus[ed] to make an
accommodation' for a disabled child, 'injuring [the child] in
ways unrelated to a FAPE,' a plaintiff 'seeking redress for
those other harms . . . is not subject to § 1415(l)'s exhaustion

[17]

rule." Doucette, 936 F.3d at 23 (quoting Fry, 137 S. Ct. at 754-55).

The Supreme Court provided clues to help courts to determine whether the gravamen of the complaint is the denial of a FAPE. The first clue asks two hypothetical questions: first, "could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school?" And second, "could an adult at the school . . . have pressed essentially the same grievance?" Fry, 137 S. Ct. at 756. If both answers are "No," the complaint "probably does concern a FAPE." Id. at 756. If the answer is "Yes" to both, FAPE is likely not the gravamen of the complaint. Id. The Court then explained that the second clue is the procedural history of the case: did the plaintiff first attempt to use the IDEA's formal hearing and procedure? See id. at 757. If so, this "provide[s] strong evidence that the substance of a plaintiff's claim concerns the denial of a FAPE." Id.

In the sole First Circuit case to consider the issue after Fry, the First Circuit found it was "simple discrimination, irrespective of the IDEA's FAPE obligation" when a child was denied access to his seizure-alert service dog and as a result suffered seizures. Doucette, 936 F.3d at 24. "[T]he section 504 claim, grounded in the refusal of the school district to

reasonably accommodate B.D.'s use of the service dog . . .
involves the denial of non-discriminatory access to a public
institution, irrespective of the school district's FAPE
obligation to provide a particular education program for B.D."
Id. at 24-25.

Dennis-Yarmouth frames the Section 504 claim as
"intrinsically linked" to Jane's IEP, calling the facts "unique
to a disabled student in an educational setting."  Dkt. 22 at
15.  The Does respond that the gravamen of the claim is not the
denial of the free appropriate public education, but rather
negligent supervision that led to Jane's assault.  They further
argue that the Fry clues point to "Yes": a child sexually
assaulted and recorded in a public theater would have a claim,
as would a teacher sexually assaulted and recorded in a school.
Dkt. 30 at 16.

The "clues" are not particularly helpful here.  In the
circumstances of this case, a child would likely not be able to
argue that she was negligently supervised by the theater if she
were sexually assaulted in a theater bathroom; neither would an
adult assaulted in a school bathroom be able to make a claim of
negligent supervision.  Therefore, the answers to both
hypotheticals would be "No."  Still, the other "clue" helps the
Does since they did not seek an administrative remedy.  What do

[19]

you do when the clues point in the opposite directions?  See
Fry, 137 S. Ct. at 759 (Alito, J., concurring) (cautioning that
the clues may be "misleading"); J.S., III by & through J.S. Jr.
v. Houston Cty. Bd. of Educ., 877 F.3d 979, 986 (11th Cir. 2017)
("The cause of action here does not fit neatly into Fry's
hypotheticals."); Sophie G. by & through Kelly G. v. Wilson Cty.
Sch., 742 F. App'x 73, 79 (6th Cir. 2018) ("Fry's clues will not
always assist courts.").

     The Supreme Court teaches that the focus should be on the
gravamen of the case, which is not the denial of a FAPE, but
rather a sexual assault caused by negligent supervision, albeit
in an educational setting.  The failure to accommodate Jane's
disability by providing her full-day supervision violated the
IEP, but it also injured her in ways unrelated to the FAPE.
Because Jane is "seeking redress for those other harms," she is
not subject to § 1415(l)'s exhaustion rule.  Fry, 137 S. Ct. at
754-55.

     Moreover, exhaustion is not required if it would be
"futile."  Doucette, 936 F.3d at 22.  "Futility applies when (1)
the plaintiff's injuries are not redressable through the
administrative process, and (2) the administrative process would
provide negligible benefit to the adjudicating court."  Id. at
31 (internal citation omitted).  Here, the Does are alleging

that the school failed to follow the IEP, not that the IEP was
faulty.  Exhaustion would be pointless because the sexual
assault has already occurred, Jane is no longer in the school,
and money damages for the harm caused by the sexual assault are
the remedy sought to make her whole.

Most courts addressing claims of sexual assault or
harassment of a disabled student who is on an IEP have not
required exhaustion.  See Doe v. Dall. Indep. Sch. Dist., 941
F.3d 224, 228 (5th Cir. 2019) (agreeing with plaintiff that
exhaustion did not apply to her Title IX claim because "though
the cause of action requires proving the denial of an
educational benefit, the allegations are about sexual
harassment, not special education opportunities"); Wellman v.
Butler Area Sch. Dist., 877 F.3d 125, 132–33 (3d Cir. 2017)
("[I]f a student who was challenging the sufficiency of her IEP
also happened to be physically assaulted on the bus going to
school, one could envision the plaintiff bringing a single
complaint with different claims arising from her school
experience, one of which seeks relief for physical injuries
sustained while on the school bus and which has nothing to do
with her access to a FAPE and IDEA relief."); FH ex rel. Hall v.
Memphis City Schs., 764 F.3d 638, 644 (6th Cir. 2014) (not
requiring exhaustion where the disabled student was sexually
abused by his aides, his injuries were noneducational in nature

and could not be remedied by an administrative process); Roe v. Lincoln-Sudbury Reg'l Sch. Dist., Civil Action No. 18-10792-FDS, 2021 U.S. Dist. LEXIS 57206, at *92-95 (D. Mass. Mar. 24, 2021) (finding IDEA exhaustion unnecessary where student brought a § 1983 claim based on emotional distress and trauma she suffered from sexual harassment) (citing E.T. ex rel. Doe v. Bureau of Special Educ. Appeals of the Div. of Admin. L. Appeals, 91 F. Supp. 3d 38, 50 (D. Mass. 2015) ("To the extent that plaintiffs seek damages for humiliation, pain and suffering, and damage to emotional well-being separate from education-related issues, those claims are independent claims that do not arise under the IDEA") (cleaned up)); McCann on behalf of J.M. v. York Sch. Dep't, 365 F. Supp. 3d 132, 144-45 (D. Me. 2019) (determining that exhaustion was not required where plaintiffs alleged that the school failed to respond to reports of harassment because of the child's disability, leading to his assault); Raymond v. Me. Sch. Admin. Dist. 6, No. 2:18-CV-00379-JAW, 2019 WL 2110498, at *11 (D. Me. May 14, 2019) ("Plaintiffs' allegation that Defendants failed to follow J.R.'s IEP by providing the requisite level of supervision and thus, allowing B.L. to follow J.R. into the restroom unattended, partially overlap with the IDEA . . . [b]ut that overlap does not preclude the Plaintiffs from seeking relief under § 504.") (internal citation omitted).

Consistent with this caselaw, I hold that exhaustion is not required.

### B.   Disability-Based Discrimination

Dennis-Yarmouth argues in the alternative that the Does' Section 504 claim must fail due to the absence of allegations of discrimination.   The district argues that

> the Complaint fails to plead facts sufficient to state a claim based on discrimination by failing to plead that the District effected any policy that wrought discrimination on Jane Doe, that it was motivated by any disability-based discriminatory animus, or that it had any notice that disabled students were not receiving the accommodations to which they were entitled.

Dkt. 22 at 17.   The Complaint does, however, allege that Dennis-Yarmouth discriminated against the disabled students in the Wave program as a whole, by failing to provide reasonable accommodation to ensure staffing to cover when an aide was absent, or when another aid was on break.   The Complaint alleges that the Assistant Principal had notice that all one-to-one assistants were needed, Coe's substitute was absent on the day of the assault and was not replaced, and the students were provided no supervision during the contractual thirty-minute break.   "[R]efusal to make an accommodation" is the type of harm that Section 504 protects. Fry, 137 S. Ct. at 754.   The Does have alleged a plausible claim that Dennis-Yarmouth

discriminated against Wave students, including Jane, to survive
this stage.

### IV.  Count IV: 20 U.S.C. §§ 1681-1686 (Title IX)

Title IX of the Education Amendments of 1972 provides, "No
person in the United States shall, on the basis of sex, be
excluded from participation in, be denied the benefits of, or be
subjected to discrimination under any education program or
activity receiving Federal financial assistance."  20 U.S.C.
§ 1681(a).  A student can bring an action in damages against a
school district for a violation of Title IX based upon student-
on-student sexual harassment if the school district receives
federal funding.  Davis Next Friend LaShonda D. v. Monroe County
Bd. of Educ., 526 U.S. 629, 646-47 (1999).  In order to state a
claim, the student must show that the funding recipient had
actual knowledge of and was deliberately indifferent to sexual
harassment that was "so severe, pervasive, and objectively
offensive" that it "deprive[d] the victim[] of access to the
educational opportunities or benefits provided by the school."
Id. at 650.  A single incident of peer harassment may be
actionable under Title IX "if that incident were vile enough and
the institution's response, after learning of it, unreasonable
enough to have the combined systemic effect of denying access to

a scholastic program or activity." Fitzgerald v. Barnstable
Sch. Comm., 504 F.3d 165, 172-73 (1st Cir. 2007), rev'd on other
grounds, 555 U.S. 246 (2009) (citing Vance v. Spencer Cty. Pub.
Sch. Dist., 231 F.3d 253, 259 (6th Cir. 2000)) (noting that "one
incident can satisfy a claim"). However, a claim that a school
could have done more in hindsight is not enough. Porto v. Town
of Tewksbury, 488 F.3d 67, 73 (1st Cir. 2007).

### A.   Time Periods in Question

#### 1.   *Before the Incident*

Plaintiffs argue that Dennis-Yarmouth was deliberately
indifferent to sexual harassment against Jane prior to the
incident in February 2018.  While the Does allege that Dennis-
Yarmouth had actual notice that there were not enough staff
members to properly supervise children in the special needs
program and therefore there was a risk that the students would
be unsupervised at certain points of the day, absent from the
Complaint is any allegation that Dennis-Yarmouth was on notice
that sexual harassment was a threat to these students during
that unsupervised time.  The Does state that Dennis-Yarmouth's
policy of relieving employees during their lunch break left Jane
and Coe unsupervised, and "[b]ut for this indifference,
plaintiff Jane would not have been sexually assaulted."  Dkt. 30
at 21.  The Does are still unable to plausibly claim that
Dennis-Yarmouth had actual knowledge that sexual harassment

could occur or that the decision to allow unsupervised time was
deliberately indifferent as opposed to negligent.  See Porto,
488 F.3d at 74 (holding that plaintiff did not prove deliberate
indifference when defendant teacher allowed a disabled student
to go to the bathroom unsupervised because he did not know there
was a high degree of risk that sexual harassment would occur).

### 2. After the Incident

With respect to the time period after the alleged sexual
assault, plaintiffs allege that the school had actual knowledge
of harassment that was severe, pervasive and objectively
offensive, and its failure to investigate amounted to deliberate
indifference.  Plaintiffs allege that, at a minimum, Dennis-
Yarmouth's Title IX Coordinator, Maria Lopes, was aware of the
alleged assault, as were the two aides who discovered Jane and
Coe in the boys' bathroom.  Her decision to "not conduct a Title
IX investigation into the assault . . . because [she believed]
'the February 5, 2018, encounter between Jane and the other
student had been viewed as a mutual two-sided interaction" could
plausibly be considered deliberately indifferent because it
involved two mentally disabled students.  Dkt. 1 ¶ 15.

Dennis-Yarmouth acknowledges that the failure to take
reasonable steps after being notified of a stand-alone incident
of harassment could be actionable under Title IX.  See Dkt. 22

at 13.  Given Jane's disability and reduced mental capacity,
Dennis-Yarmouth's alleged determination that the sexual activity
between Jane and Coe was "mutual" illustrates an "investigation
[that] was so deficient as to be unreasonable."  Doe v. Emerson
Coll., 271 F. Supp. 3d 337, 355 (D. Mass. 2017); see Pawtucket
Sch. Dep't, 969 F.3d at 9 ("[Thirteen year old] Doe may be able
to make the case that once [the principal] learned of the sexual
encounter with [a seventeen year old], school officials not
indifferent to the abuse would have investigated or recognized
Doe's apparent vulnerability to sexual assault and made at least
some attempt to protect her.").

Finally, Dennis-Yarmouth argues that the school's response
could not be considered unreasonable because Jane's parents
pulled her from the school after the incident.  The Complaint
does not specify how much time passed between when the incident
took place and when Jane withdrew from school.  Title IX
liability can arise after a student withdraws from school.  See
Fitzgerald, 504 F.3d 172 (citing Williams v. Bd. of Regents, 477
F.3d at 1282, 1297 (11th Cir. 2007)).

**V.   Count V, VI, and VII: Mass. Gen. Laws ch. 93 § 103**

The Does next bring a claim under the Massachusetts Equal
Rights Act ("MERA") against Dennis-Yarmouth (Count V), Zaineh

(Count VI), and Hardigan (Count VII).  MERA protects the right to

> make and enforce contracts, to inherit, purchase, to lease, sell, hold and convey real and personal property, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Mass. Gen. Laws ch. 93, § 102(a).  The Does argue that Jane's IEP should be understood as a contract, and they aver that Defendants breached the terms of the IEP when they failed to provide supervision.

Most courts have rejected the argument that an IEP qualifies as a contract.  See L.J. by N.N.J. v. Sch. Bd. of Broward Cty., 927 F.3d 1203, 1212 (11th Cir. 2019) ("Setting out a standard under which even a de minimis failure to implement a particular provision of an IEP would be actionable would also be inconsistent with the recognition that an IEP is a plan, not a contract.") (citing 20 U.S.C. § 1414(d)(1)(A)(i) (defining an IEP as "a written statement")); Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J, 502 F.3d 811, 820 (9th Cir. 2007) ("[T]he IEP is entirely a federal statutory creation, and courts have rejected efforts to frame challenges to IEPs as breach-of-contract claims."); Ms. K v. City of S. Portland, 407 F. Supp. 2d 290, 301 (D. Me. 2006) (agreeing with defendants that "an IEP

is not a legally binding contract"); <u>SH v. Campbell Cty. Sch.</u>
<u>Dist.</u>, 409 P.3d 1231, 1235 (Wyo. 2018) (same). <u>Cf.</u> <u>Easter Seals</u>
<u>N.H., Inc. v. Tantasqua Reg'l Sch. Dist.</u>, No. WOCV201001011D,
2011 WL 4424067, at *4 (Mass. Super. Ct. July 20, 2011)
(referring to an IEP as a "contract implied-in-law" which "is
not really a contract, but a legal obligation closely akin to a
duty to make restitution") (internal quotation marks omitted).
Because plaintiffs fail to identify a contract between
themselves, the school, Zaineh, or Hardigan, this claim is
dismissed.

## VI.  <u>Count VIII, IX: Intentional or Reckless Infliction of</u> <u>Emotional Distress</u>

The Does bring claims for Intentional or Reckless
Infliction of Emotional Distress ("IIED") against Zaineh and
Hardigan (Count VIII and IX, respectively).  "The standard for
making a claim of intentional infliction of emotional distress
is very high."  <u>Doyle v. Hasbro, Inc.</u>, 103 F.3d 186, 195 (1st
Cir. 1996).  The claim requires "(1) that the defendant intended
to cause, or should have known that his conduct would cause,
emotional distress; (2) that the defendant's conduct was extreme
and outrageous; (3) that the defendant's conduct caused the
plaintiff's distress; and (4) that the plaintiff suffered severe
distress."  <u>Doe v. D'Agostino</u>, 367 F. Supp. 2d 157, 173 (D.
Mass. 2005) (quoting <u>Sena v. Commonwealth</u>, 629 N.E.2d 986, 994

(Mass. 1994)).  Extreme and outrageous conduct is conduct that is "beyond all possible bounds of decency" and "utterly intolerable in a civilized society." Doyle, 103 F.3d at 195 (quoting Agis v. Howard Johnson Co., 355 N.E.2d 315, 319 (Mass. 1976)).

The Does have not alleged sufficient facts to state a plausible claim that the individual defendants intended that their conduct would cause emotional distress to Jane or that their conduct was beyond all bounds of human decency.  While the sexual assault was tragic, at worst the individual defendants were negligent for failing to supervise for 15 minutes.  This claim is dismissed as to both defendants.

## VII. **Count X: Loss of Consortium**

Massachusetts provides a cause of action to parents for loss of consortium with their child where the child has been "seriously injured" by a tortfeasor.  Mass. Gen. Laws ch. 231, § 85X.  The Does bring a claim under this statute against all three defendants.  "Consortium claims are derivative in nature, so [they] require[] an underlying tortious act."  Thomas, 267 F. Supp. 3d at 315.

### A.   **Zaineh and Hardigan's Motion**

Plaintiffs must assert an underlying tort claim against Defendants Zaineh and Hardigan to succeed.  Plaintiffs have

failed to do so, as their IIED claims are dismissed.
Accordingly, Count X is dismissed as against Zaineh and
Hardigan.

### B. Dennis-Yarmouth's Motion

Dennis-Yarmouth seeks dismissal on a different ground.  The
district argues that the consortium statute only contemplates
recovery from a "person," citing Thomas, 267 F. Supp. 3d at 315.
In Thomas, this Court held that Section 85X does not allow
recovery from municipal defendants.  267 F. Supp. 3d at 315
(citing Harrington v. Attleboro, 172 F. Supp. 3d 337, 354-55 (D.
Mass. 2016)) ("Though Massachusetts appellate courts have not
yet addressed whether a town is a 'person' under the loss of
consortium statute, they have decided that other statutes using
the word 'person' do not include governmental entities.").

The Does urge the Court to reconsider, pointing to the
legislative history of the consortium statute's enactment.  The
Does aver that the statute was enacted in response to a case in
which a parent was not able to recover for loss of consortium
due to injuries sustained by a governmental entity, and
therefore this Court should draw the inference "that the
Legislature knew it was creating a cause of action which could
be asserted against governmental entities."  Dkt. 30 at 30
(citing Monahan v. Town of Methuen, 558 N.E.2d 951, 956 (Mass.
1990)) ("General Laws c. 231, § 85X, which created a cause of

action for parents' loss of consortium of their child, was enacted in response to this court's decision in <u>Norman v. Massachusetts Bay Transp. Auth.</u>, 403 Mass. 303, 529 N.E.2d 139 (1988).").  <u>Monahan</u> does not address the issue of whether a town could be liable under § 85X.  In the absence of any contrary guidance from the state appellate courts, I again determine that the statutory definition of "person" precludes recovery against a town.  <u>Bradshaw</u>, 2013 WL 5236110, at *14 ("The definitions in Mass. Gen. Laws ch. 4, § 7 apply to all Massachusetts statutes. In that section, a 'person' is defined to include 'corporations, societies, associations and partnerships,' but makes no mention of municipalities or government entities.").  Count X is also dismissed as to Dennis-Yarmouth.

## VIII. <u>Final Judgment Against Individual Defendants</u>

The Court may direct entry of a final judgment as to some claims or parties "only if the court expressly determines that there is no just reason for delay."  Fed. R. Civ. P. 54(b). Before certifying judgment under Rule 54(b), the Court must "determine[] that (i) the ruling in question is final and (ii) there is no persuasive reason for delay."  <u>Gonzalez Figueroa v. J.C. Penney P.R., Inc.</u>, 568 F.3d 313, 317 (1st Cir. 2009). Because all the claims against the individual defendants are dismissed and there is no just reason for delay, the Court further **<u>ALLOWS</u>** the individual defendants' motions for the entry

of a separate and final judgment pursuant to Federal Rule of Civil Procedure 54(b).

**ORDER**

For the reasons stated above, the Court **ALLOWS** the motions to dismiss for Zaineh and Hardigan (Dkt. 16 and 19, respectively) and for entry of a separate and final judgment pursuant to Fed. R. Civ. P. 54(b).  As to Dennis-Yarmouth, the Court **ALLOWS IN PART and DENIES IN PART** the district's motion to dismiss (Dkt. 21). The surviving claims against Dennis-Yarmouth are Count I (negligence under MTCA), Count IV (Title IX), and Count V (Rehabilitation Act).

SO ORDERED.

/s/     PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge